IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SYLVIA WILSON | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:21-cv-309 |
| | § | JURY |
| CITY OF CORPUS CHRISTI, TEXAS | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**NOW COMES** Sylvia Wilson ("Plaintiff"), hereby filing this, her *Plaintiff's Original Complaint* against her former employer, the City of Corpus Christi, Texas (hereinafter occasionally referred to as "Defendant" or "City"), showing in support thereof as follows:

**I. PARTIES**

1. Plaintiff is a female citizen of the United States and a Texas resident, residing in Nueces County, Texas.

2. Defendant is a political subdivision of the State of Texas. Service of process may be accomplished by serving its Mayor, Paulette M. Guajardo, at 1201 Leopard Street, Corpus Christi, Nueces County, Texas.

**II. JURISDICTION, VENUE & CONDITIONS PRECEDENT**

3. Defendant, at all relevant times hereto, was an employer as defined by and within the meaning of the Americans With Disabilities Act of 1990 (hereinafter "ADA"), codified at 42 U.S.C. §12101, 29 U.S.C. §2611, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Texas Commission on Human Rights Act ("TCHRA), Tex. Lab. Code §§ 21.001 *et seq*.

4.      Plaintiff timely filed a Notice of Charge of Discrimination dually with the United States Equal Employment Opportunity Commission (EEOC) and with the Texas Workforce Commission Civil Rights Division (TWCCRD), charge number 451-2021-02332.

5.      On September 30, 2021, Plaintiff received her *Dismissal and Notice of Rights* from the EEOC. On October 29, 2021, Plaintiff received her *Notice of Complainant's Right to File Civil Action* from the TWCCRD. Plaintiff has therefore complied with all conditions precedent and exhausted all administrative remedies prior to filing suit. Plaintiff now timely files this, her *Plaintiff's Original Complaint*, within ninety (90) days of receiving her *Dismissal and Notice of Rights*, and within sixty (60) days of receiving her *Notice of Complainant's Right to File Civil Action*.

6.      Plaintiff brings this action for compensation and other relief for violations under the ADEA, the ADA and the TCHRA, in that Defendant has denied Plaintiff her rights as guaranteed by the Constitution and laws of the United States of America and/or the State of Texas. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state claims that will be set forth in this complaint. Venue is proper in the Southern District of Texas, Corpus Christi Division, as this is the district where the claims arose in accordance to 29 U.S.C. § 1391(b).

### III. FACTS

7.      Whenever, in this complaint it is alleged that any Defendant and/or person employed by Defendant did any act, thing, and/or omission, it is meant that Defendant and/or Defendant's officers, agents, servants, employees or representatives did such act, thing and/or omission and that at the time it was done with full authorization and/or ratification of Defendant.

8. Plaintiff was originally hired by Defendant in or about May 2004, as a Senior Human Resources Analyst. About three years later, in 2007, Plaintiff was promoted to Human Resources Administrator. From that position, in or about April 2011, Plaintiff was appointed by the (former) City Manager to Human Relations Administrator – a position she held for approximately nine years – until that department was unofficially dissolved (around the end of December 2019) at the direction of the current City Manager, Peter Zanoni. Even though Zanoni "dissolved" the Human Relations department, it legally remained in existence per city ordinance 23411, Chapter 24 – Human Relations, Articles 1 – V.

9. When Zanoni dissolved the Human Relations Department, Plaintiff was notified that she had been demoted to Human Resources Special Project Manager (in January 2020) – a position she held until her 60th birthday. On Plaintiff's birthday, she took a personal day off and when she returned to work the next day, she was called into a meeting with Eyvon McHaney, Director of Human Resources, and Tracey Lawson, Assistant Director of Human Resources. During that meeting, Plaintiff was told she was being terminated and that her last day of employment would be the next day, September 30, 2020.[1]

10. During the meeting Plaintiff was strongly "encouraged" to retire in lieu of termination. McHaney and Lawson told Plaintiff – persistently and repeatedly – "you're eligible for retirement" and essentially that if she refused to retire, she would be fired. In response, Plaintiff persistently and repeatedly stated that she was not yet ready to retire. When Plaintiff asked how her termination was being processed, McHaney and Lawson said that was why they were meeting with her – so *she* could make that determination.

---

[1] Plaintiff was told that Defendant had considered calling her in on her birthday to fire her, but decided to wait a day.

11.     The truth is that when Plaintiff refused to retire upon turning 60, she was fired. Plaintiff flat out told Defendant that she was not going to voluntary resign or retire and that she wanted her termination to be processed per Defendant's *Reduction In Force* policy. Initially, Defendant agreed to do that, but ultimately failed to honor that agreement. Without informing Plaintiff, Defendant processed her termination as though she had quit. To be crystal clear, Plaintiff **did not** quit or resign. When Plaintiff found this out, she personally contacted the benefits division of HR to correct her termination to "involuntary."

12.     On Plaintiff's last day of work, she was a given a list of job vacancies to consider transferring into. On or about October 12, 2020, she called and emailed Lawson regarding her interest in an open position in the Water Utilities department as Administrative Manager. She also applied for the position via the City's job application portal. Neither Lawson nor any other representative of Defendant ever responded to Plaintiff's interest in that position.

13.     On or about February 17, 2021, Plaintiff was informed that two other female employees under 40 (employed in the City Manager's office) were counseled for poor performance but were not terminated and instead, transferred to other departments. They were transferred without being required to submit applications and/or interview for their new positions.

14.     Plaintiff is a cancer survivor who is currently in remission. In or about November 2011, Plaintiff was diagnosed with breast cancer. After receiving her diagnosis, in 2011, Plaintiff underwent surgery and radiation in 2012 and was allowed to work from home during that time, under the direction of the (former) City Attorney, Carlos Valdez. Plaintiff informed the current City Attorney, Miles Risley, of her diagnosis and always kept him informed of her annual treatments (she was allowed to work from home during that time), and also freely discussed her diagnosis and treatments with her co-workers – which McHaney and Lawson were also fully aware

of.

15. An unusually high number of women over 40 – most of whom are disabled and/or regarded as being disabled – have been terminated or forced to resign/retire since Zanoni has become the City Manager. Upon information and belief, it was also discovered that multiple executive City employees compiled a "hit list" of people in line for termination – a list which consists mainly women over the age of 40 and/or disabled.

16. At the time Plaintiff was terminated, she was a Plan I full-time employee who had approximately 178:81 of accrued, unused sick hours saved. Even though Plaintiff was fired, her eligibility for payout of her accrued, unused sick hours was based on her age, sixty (60), and her completion of a minimum of five (5) years of continuous service. When Plaintiff was terminated, she inquired about cashing out her accrued, unused sick hours but was told that despite the language in the City Ordinance, City retirees and/or employees who are terminated at/past age 60 (upon completion of a minimum of five [5] years of continuous service) can only cash in their accrued, unused sick hours at 50% with a maximum pay out of three hundred sixty (360) hours. The reasoning Plaintiff was given was that based on the ordinance, 720 hours is valued at 360 hours in the payout, which means that employees who are 60 or older and/or retirees' accrued, unused sick hours are valued only at 50% (because 360 is 1/2 of 720). Plaintiff was advised that her payout for sick leave was consistent with the City ordinance and past practice and she was only allowed to cash out 89:40 (approximately 50%) of her accrued, unused sick hours.

17. Chapter 39, Article III, of the Code of Ordinances of the City of Corpus Christi, Texas, Section 39-339(a), reads as follows:

   a) A Plan I employee, with the exception of airport public safety officers who work shifts of twenty-four (24) hours on and forty-eight (48) hours off, who terminates due to any of the following conditions, will be eligible for payment of up to seven hundred twenty (720) hours of accumulated sick leave credit, or

5

if base hours are less than forty (40) hours per week, on a pro rated basis that can be cashed in for the equivalent of up to three hundred sixty (360) hours, or if base hours are less than forty (40) hours per week, on a pro rated basis, of pay at the rate of the employee's last monthly salary or hourly rate: (1) when eligible for retirement under requirements of the Texas Municipal Retirement System Act (TMRS); (2) due to disability or service retirement; (3) at age sixty (60) upon completion of a minimum of five (5) years of continuous service; or (4) upon death with payment made to the employee's designated beneficiary.[2]

18. On or about May 25, 2021, the City proposed an amendment which amends Corpus Christi Code Chapter 39, Section 39-339, which passed on the first reading on August 10, 2021, and again on the second/final reading on August 17, 2021, when it was enacted. The amendment reads as follows:

> Sec. 39-339. - Plan I payment of sick leave upon ~~termination~~ <u>retirement or death</u>.
>
> ~~(a) A Plan I employee, with the exception of airport public safety officers who work shifts of twenty-four (24) hours on and forty-eight (48) hours off, who terminates due to any of the following conditions, will be eligible for payment of up to seven hundred twenty (720) hours of accumulated sick leave credit, or if base hours are less than forty (40) hours per week, on a prorated basis that can be cashed in for the equivalent of up to three hundred sixty (360) hours, or if base hours are less than forty (40) hours per week, on a prorated basis, of pay at the rate of the employee's last monthly salary or hourly rate: (1) when eligible for retirement under requirements of the Texas Municipal Retirement System Act (TMRS); (2) due to disability or service retirement; (3) at age sixty (60) upon completion of a minimum of five (5) years of continuous service; or (4) upon death with payment made to the employee's designated beneficiary.~~
>
> <u>(a) A Plan I employee may cash in up to 720 hours accrued sick leave at the rate of 50 percent of the employee's last monthly salary or hourly rate upon termination due to retirement under requirements of the Texas Municipal Retirement System (TMRS) Act or due to death. Payment of sick leave due to death will be paid in accordance with the Texas Estates Code.</u>

19. To be clear, the "50 percent interpretation" was not an "interpretation" at all, rather it was Defendant's attempt – a successful attempt at that – to deny its retiring/exiting employees'

---

[2] The above stated version of Chapter 39, Article III, of the Code of Ordinances of the City of Corpus Christi, Texas, Section 39-339(a), was amended and approved by unanimous vote of the City Council, and signed by the City's Mayor, City Secretary and City Attorney on July 22, 2008.

6

benefits/retirement funds. Defendant acted willfully and intentionally and only allowed its employees who left their employment pursuant to Section 39-339(a), to cash out their accrued, unused sick leave for half of the value, in violation of its own ordinance. It is now clearer than ever that Defendant acted willfully, because after (former) co-worker Rudy Bentancourt publicly complained about being shorted hundreds of sick hours, Defendant prepared an amended ordinance which actually changed the existing ordinance and now says that a Plan I employee may only cash out their sick leave at 50 percent. Plaintiff's shortage was not a mistake or an oversite. It was a willful and intentional act which deprived Plaintiff and other similarly situated individuals of thousands – possibly hundreds of thousands – of dollars.

20.     Defendant's violation of Corpus Christi Code Chapter 39, Section 39-339, harms its employees who leave their employment pursuant to Section 39-339 – all of whom are 40 years of age or older – by forcing them to cash out only 50 percent of their accrued, unused sick hours in violation of its own ordinance. Defendant has a pattern and practice of discriminatory treatment of individuals who are 40 years of age or older and/or has employment practices that create an unlawful adverse impact on individuals who are 40 years of age or older. This is class-wide discrimination that affects employees who are over 40 which is a violation of the ADEA.

## IV. FIRST CLAIM FOR RELIEF: VIOLATIONS OF THE ADEA

21.     Plaintiff re-alleges and incorporates the above paragraphs by reference as if fully set forth herein.

22.     Defendant's actions as described herein constitute unlawful age discrimination in violation of the ADEA.

23.     Throughout the liability period, Defendant has engaged in a pattern and practice of discriminating against individuals who are age 40 and older by knowingly and intentionally, in the

company's practices related to retirement, treating adversely individuals who are 40 years old and older, and treating preferentially individuals who are under 40 years old.

24. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has been denied employment, as well as compensation related to employment and employment benefits with Defendant.

25. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost benefits associated with her employment.

26. As a result of Defendant's unlawful discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

27. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff's termination and/or denial of employment constitutes a willful violation of 29 U.S.C. § 623. Denial of payment for half of Plaintiff's accrued, unused sick leave pursuant to the Corpus Christi Code Chapter 39, also constitutes a willful violation of 29 U.S.C. § 623, and as such entitles Plaintiff to recover liquidated damages.

28. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position that she would have been in but for Defendant's unlawful discrimination.

## V. SECOND CLAIM FOR RELIEF:
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that Defendant maintains a pattern and practice of discriminating against disabled Americans, as well as those Defendant perceives as being disabled, such as Plaintiff, in its employment practices. More specifically, Defendant, through its acts and omissions, unjustifiably terminated Plaintiff because

she suffers from a disability (and/or has in the past), thereby resulting in the disparate treatment of Plaintiff.

31. By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she suffers and/or previously suffered from an impairment that substantially limits one or more major life activities.

32. By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she was hired by Defendant and, *ipso facto*, was qualified for her position based upon the requisite skill, experience, education and other job-related requirements for the position, as shown by the actions of Defendant.

33. By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that she can perform the essential functions of her job.

34. By and through her *Plaintiff's Original Complaint*, Plaintiff pleads that her disability and/or perception thereof, was the sole and/or another improper reason for Defendant's decision to terminate her employment, resulting in its disparate treatment of Plaintiff.

35. Further, and in the alternative, Plaintiff pleads that she suffers and/or suffered from a physical impairment that is substantially limiting only because of the attitudes of others, including Defendant, toward the impairment.

36. Further, and in the alternative, Plaintiff pleads that she may not suffer from an impairment that limits a major life activity at all, but is "regarded as" suffering from a substantially limiting impairment, as that term of art is defined by the ADA.

37. Further, and in the alternative, Plaintiff pleads that Defendant utilized qualification standards, employment tests or other selection criteria, that serve to screen out or tend to screen out an individual with a disability or a class of individuals with disabilities and that said standards, tests, and other selection criteria are inconsistent with business necessity. The aforementioned

discriminatory labor and employment law practices result in a disparate impact upon Plaintiff and similarly situated individuals, *in genere*.

## VI. THIRD CLAIM FOR RELIEF:
## VIOLATIONS OF CHAPTER 21 OF THE TEXAS LABOR CODE
## TCHRA AGE DISCRIMINATION

38. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

39. As described above, Defendant's actions constitute unlawful discrimination on the basis Plaintiff's age in violation of the Texas Commission on Human Rights Act Tex. Lab. Code § 21.001, *et seq*. The employment practices complained of above were intentional.

40. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Labor Code.

41. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

42. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

43. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's protected rights. Plaintiff therefore seeks punitive damages under the Texas Labor Code.

44. Additionally, Plaintiff seeks any and all equitable relief necessary to return herself to the position that she would have been in but for Defendant's unlawful discrimination.

45. Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her state rights in this action. Consequently,

Plaintiff seek attorneys' fees, expert costs and other costs of this suit under the Texas Labor Code.

### VII. FOURTH CLAIM FOR RELIEF:
### VIOLATIONS OF CHAPTER 21 OF THE TEXAS LABOR CODE
### TCHRA DISABILITY DISCRIMINATION

46. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

47. As described above, Defendant's actions constitute unlawful discrimination on the basis Plaintiff's disability and/or perceived disability in violation of the Texas Commission on Human Rights Act Tex. Lab. Code § 21.001, *et seq*. The employment practices complained of above were intentional.

48. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under the Texas Labor Code.

49. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

50. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

51. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's protected rights. Plaintiff therefore seeks punitive damages under the Texas Labor Code.

52. Additionally, Plaintiff seeks any and all equitable relief necessary to return herself to the position that she would have been in but for Defendant's unlawful discrimination.

53. Defendant's actions referenced in the paragraphs above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her state rights in this action. Consequently,

Plaintiff seek attorneys' fees, expert costs and other costs of this suit under the Texas Labor Code.

## VIII. FIFTH CLAIM FOR RELIEF:
## BREACH OF CONTRACT & UNJUST ENRICHMENT

54. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

55. Defendant breached its contract with Plaintiff to pay her in accordance with Corpus Christi Code Chapter 39, Section 39-339.

56. At all times material to this complaint, Plaintiff was ready, willing, and able to perform her part of the agreement between the parties, and did in fact perform each and every part of the agreed upon contract. In violation of all promises and obligations under the agreement described herein, Defendant failed to conform to the terms of the contract.

57. Plaintiff fully performed all duties agreed upon under the contract, however Defendant has failed to compensate Plaintiff fully, therefore Defendant has been unjustly enriched. Upon the completion of said obligation, Defendant failed to comply with the agreement with Plaintiff as required under the contract, and this breach has proximately caused Plaintiff to suffer actual, incidental, and consequential damages.

## IX. DAMAGES & REQUESTED RELIEF

58. As a direct and proximate result of Defendant's discrimination on the basis of age and disability and in violation of the ADEA and TCHRA, Plaintiff has suffered monetary losses.

59. Plaintiff would show that Defendant intentionally violated the ADA, ADEA and the TCHRA and is therefore liable to Plaintiff for all reasonable damages suffered by Plaintiff, including, but not limited to, past and future wages and other compensation, in an amount to be determined upon inquest, as well as compensation for compensatory and punitive damages, in an amount to be determined upon inquest. Defendant is further liable to Plaintiff for liquidated

damages under the ADEA and punitive damages under the TCHRA.

60. As a result of Defendant's discrimination, Plaintiff has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages. Plaintiff therefore seeks non-pecuniary damages under the Texas Labor Code.

61. Plaintiff is entitled to recover liquidated damages and reasonable and necessary attorney's fees pursuant to 29 U.S.C. § 626.

62. Plaintiff requests the judgment of this Court against Defendant as follows:

   a. Rendering a declaratory judgment that the practices complained of herein are unlawful and violate the ADA, ADEA and the TCHRA;

   b. Rendering a declaratory judgment that the practices complained of herein are unlawful and violate the parties' contract, pursuant to Chapter 39 of the Code of Ordinances of the City of Corpus Christi, Texas, Section 39-339(a);

   c. Issuing a mandatory injunction reinstating Plaintiff's employment and employment benefits, retroactive to the date of Plaintiff's termination;

   d. Issuing a mandatory injunction forbidding Defendant from violating rights secured by the Americans with Disabilities Act of 1990;

   e. Issuing a permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in all unlawful policies, practices, customs, and usages set forth herein;

   f. Ordering Defendant to post notices concerning its duty to refrain from discriminating against employees on the basis of disability and age;

    g.  Ordering Defendant to pay Plaintiff monetary and liquated damages for harms suffered as a result of Defendant's violations of the ADA, ADEA and TCHRA;

    h.  Ordering Defendant to pay actual damages, punitive damages and liquidated damages in the maximum amount allowed by law;

    i.  Awarding Plaintiff prejudgment and postjudgment interest at the prevailing rate on the compensatory damages as a result of Defendant's discriminating against them;

    j.  Awarding reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

    k.  Awarding Plaintiff such other relief as this Court deems just and appropriate.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial on the merits, she recover judgment against Defendant for any and all other general or specific relief to which she proves herself justly entitled.

Respectfully submitted,

**GALE LAW GROUP, PLLC**
711 N. Carancahua St., Suite 1660
Corpus Christi, Texas 78401
Mailing Address:
P.O. Box 2591
Corpus Christi, Texas 78403
Phone Number: 361-808-4444
Fax Number: 361-232-4139

 /s/ Amie Augenstein
Amie Augenstein
*Attorney-in-Charge for Plaintiff*
Texas Bar No. 24085184
Southern District Bar No. 2236723
Amie@GaleLawGroup.com

/s/ Christopher J. Gale

>Christopher J. Gale
>*Attorney for Plaintiff*
>Texas Bar No. 00793766
>Southern District Bar No. 27257
>Chris@GaleLawGroup.com

### **Demand for Jury Trial**

Plaintiff hereby demands trial by jury pursuant to Fed.R.Civ.P. 38(b).